# Exhibit A

SUPREME COURT OF THE STATE OF NEWE YORK
COUNTY OF SUFFOLK

----------------------------------------------------------------------X

THE INN AT EAST WIND LLC,

                                   Plaintiffs,

                  -against-

THE CINCINNATI INSURANCE COMPANY,

                                  Defendant.

----------------------------------------------------------------------X

Index No.

Date Filed:

**SUMMONS**

Plaintiff designate Suffolk County. The basis of the venue designated is the place of business of Plaintiff.

Plaintiff's address:
5720 Route 25A
Wading River, New York
11792

**TO THE ABOVE-NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorney an answer to the Verified Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated:        Great Neck, New York
               February 14, 2022

                         Yours, etc.

                         **GREENBLATT AGULNICK KREMIN, P.C.,**

                         By: _____
                             Scott E. Agulnick, Esq.
                       Attorney for Plaintiffs
                       **THE INN AT EAST WIND LLC**
                       55 Northern Blvd., Suite 302
                       Great Neck, New York
                       Tel: (718) 352- 4800
                       Fax: (718) 732- 2110

FILED: SUFFOLK COUNTY CLERK 02/14/2022 05:07 PM INDEX NO. 602775/2022

NYSCEF DOC. NO. 1    Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 3 of 22 PageID #: 11   RECEIVED NYSCEF: 02/14/2022

Defendant's Address:

THE CINCINNATI INSURANCE COMPANY
6200 S. Gilmore Road
Fairfield, OH 45014

Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 4 of 22 PageID #: 12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
THE INN AT EAST WIND LLC,

                           Plaintiffs,                Index No.

                -against-                  **VERIFIED COMPLAINT**

THE CINCINNATI INSURANCE COMPANY,

                           Defendant.
-------------------------------------------------------------------X

Plaintiff, THE INN AT EAST WIND LLC, by their attorneys, **GREENBLATT AGULNICK KREMIN, P.C.**, for their Verified Complaint against the Defendant THE CINCINNATI INSURANCE COMPANY, alleges as follows:

## THE PARTIES

1.      That at all times hereinafter mentioned, Plaintiffs, THE INN AT EAST WIND LLC (hereinafter collectively referred to as "Plaintiff") is a domestic limited liability company duly formed under the laws of the State of New York with a place of business at 5720 Route 25A, Wadding River, New York 11792.

2.      That Defendant, THE CINCINNATI INSURANCE COMPANY, (hereinafter "CINCINNATI" or "Insurance Company") is a foreign corporation with its principal offices located at 6200 S. Gilmore Road, Fairfield, Ohio 45014

3.      That CINCINNATI, its subsidiary, broker and/or agent is an insurance company licensed, admitted, engaging in, and/or authorized to engage in the business of liability and property and casualty insurance throughout the world, including within the State of New York, with offices for the transaction of business located within the State of New York.

4.      Plaintiff brings this action against Defendant CINCINNATI with regard to the Defendant Insurance Company's bad faith failure to fully indemnify Plaintiff's for its freeze damage loss which was discovered on or about June 9, 2021 at 5720 Route 25A, Wading River, New York 11792 (hereinafter referred to as the "Property"), the facts and circumstances being more fully set forth below.

5.       The transaction of events and the real property that is the subject of this lawsuit is located within the County of Suffolk, State of New York.

## RELEVANT FACTS

6.      At all times hereinafter alleged, Plaintiff owned and had an insurable interest in the real property, fixtures, and business personal property of the business The Inn at East Wind at 5720 Route 25A, Wadding River, New York 11792 (the "Property"), in the County of Suffolk and State of New York.

7.      At all times hereinafter alleged, Plaintiff owned and had an insurable interest in the real property, improvements and betterments, fixtures, and business personal property located at the Property.

8.      That at all relevant times hereinafter, CINCINNATI, its subsidiary, and/or its agent for good and valuable consideration and a premium paid, issued to Plaintiff a Equipment Breakage Coverage insurance policy, including endorsements and amendments thereto which became a part of said policy, bearing the policy number ETD 055 61 59 (the "Policy"), whereby it insured the Property against all risks of loss to certain specified perils in the limits contained therein, including, *inter alia*, physical loss from freezing. The policy was signed by the authorized agents of the Defendant, its subsidiary, and/or agent.

Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 6 of 22 PageID #: 14

9.      On or about June 9, 2021, while the insurance policy was in full force and effect, it was discovered that a freeze damage had occurred, damaging certain HVAC/chiller equipment at the Property (the "Loss").

10.     By reason of the above-mentioned valve leak and resulting damage, Plaintiffs have sustained a loss from the valve leak in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00).

11.     That Plaintiffs notified Defendant, CINCINNATI, its subsidiary, and/or agent of the occurrence at the aforementioned property and of the loss sustained thereby (hereinafter the "Claim").

12.     That Plaintiffs have submitted to the Defendant's request for a complete examination of all the facts and circumstances surrounding the loss, to the extent that such was requested by Defendant.

13.     That Plaintiffs have satisfied all conditions precedent to the instant suit.

14.     At all times mentioned, Plaintiffs have not obtained any other insurance upon the described property.

15.     By reason of Defendant, CINCINNATI contractual undertaking to Plaintiffs, pursuant to the Policy, to properly evaluate and pay claims thereunder to the extent of Plaintiffs' loss up to the limits prescribed by the Policy, CINCINNATI, owed and continues to owe Plaintiffs the duties of good faith and fair dealing in connection with the parties' contractual relationship.

16.     In accordance with the aforesaid duties of good faith and fair dealing, Insurance Company was and is prohibited from undertaking any act which would have the effect of injuring, minimizing, or destroying Plaintiffs' rights deriving from their contractual relationship with Insurance Company under the Policy.

Case 2:22-cv-01343-JMA-ARL  Document 1-2  Filed 03/11/22  Page 7 of 22 PageID #: 15

17.     That Defendant failed and refused to fully pay Plaintiffs for the full extent of the damages sustained at the Property as a result of the freeze, denying coverage entirety by way of asserting a nonsensical and incoherent proximate cause analysis and coverage analysis under Equipment Breakdown Coverage (hereinafter the "Denial").   A copy of the Denial is annexed hereto as EXHIBIT A.

18.     In sum, in an attempt to create the illusion of a coverage analysis, Defendant even retained an engineer who undertook to opine as to the "cause" of the Loss, when the analysis was in reality an analysis as to the cause and origin of the Loss rather than the efficient proximate cause.

19.     That the engineer retained by Defendant confirmed the mechanism of the Loss, and confirmed by his findings that the efficient proximate cause of the Loss was freezing.

20.     That while there may have been remote causes of the Loss, the damage to the Property was in fact freezing, as corroborated by the Defendant's own engineer.

21.     That following the Denial, Plaintiff sent correspondence to the Defendant articulating that the Defendant had erred in their proximate cause analysis, setting forth precedent and Policy language which supported coverage.  A copy of Plaintiff's letter dated January 10, 2022 is annexed hereto as EXHIBIT B.

22.     After more than a month, Defendant responded by letter dated February 11, 2022 (the "February 11, 2022 Letter"). A copy of Defendant's letter dated February 11, 2022 is annexed hereto as EXHIBIT C.

23.     That the February 11, 2022 letter, which was drafted and/or approved by Defendant's upper management, admitted that the Defendant never considered coverage under the main policy forms and initially limited its coverage analysis to the Equipment Breakdown Form.

Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 8 of 22 PageID #: 16

24.     That Defendant's failures in undertaking a proper and complete coverage analysis defies credulity, as the Defendant had admitted that it denied a large loss without even considering the coverages afforded by the Policy as a whole.

25.     That the Defendant's failures were inexplicable, and support a finding that the failures were in fact calculated efforts at deception.

26.     That again, after admitting that the Defendant failed to consider the coverages under the substantive portions of the Policy, Defendant again attempted to assert nonsensical and incoherent grounds for denial.

26.     In doing so, Defendant then asserted in the February 11, 2022 Letter the exclusion due to loss resulting from, in sum and substance, wear and tear.

27.     However, it was confirmed that the cause of the Loss was in fact freezing, by the Defendant's own engineer, so Defendant was well aware that such an exclusion would not apply.

28.     That in doing so, Defendant then asserted in the February 11, 2022 Letter the exclusion for Limitation or Appliance Defects, again well aware that such an exclusion would not apply.

29.     However, the Limitation or Appliance Defects provision applies to defects, not physical loss from casualty, and only limits coverage when liquid flows from a system, and not into a system.

30.     Defendant then asserted in the February 11, 2022 Letter exclusionary language related to the actual cause of loss, freezing, however, it was known and established that the exception to the exclusion had been satisfied by way of the Plaintiff having winterized the system prior to the Loss.

31.    That Defendant's claims handling process in this claim has been one calculated to avoid coverage, delay, and deny, without regard for the Policy or the rights of the Plaintiff.

32.    That a spotlight was shined on Defendant's knee-jerk inclination to deny any claim by virtue of their failure to even consider the entire Policy and the coverages afforded therein before denying.

33.    That Defendant maintained their refusal to full cover the loss, notwithstanding the corroboration by the Defendant's own engineers of a covered Loss.

34.    That inherent in every contract is a duty of good faith and fair dealing.

35.    That the conduct of the Defendant as aforesaid, amounts to bad faith and a breach of the Defendant's duty of good faith and fair dealing.

36.    By failing to pay Plaintiffs under the Policy to the full extent of Plaintiffs' loss up to the limits of the Policy, despite contractual obligations, legal precedent, and/or statutory authority, Insurance Company has breached the Policy, acted in bad faith, and breached the duties of good faith and fair dealing owed to Plaintiffs.


## AND AS FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

37.    Plaintiffs repeat and re-allege all allegations set forth above as if more fully and completely set forth herein.

38.    Insurance Company failed to pay Plaintiffs under the Policy to the full extent of Plaintiffs' loss and Defendant CINCINNATI has breached its obligation under the Policy with regard to the Loss.

39.    As a result of Defendant's breach, Plaintiffs have been damaged in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00),

Case 2:22-cv-01343-JMA-ARL Document 1-2 Filed 03/11/22 Page 10 of 22 PageID #: 18

plus consequential damages in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00).

40.     That the consequential damages sustained and to be sustained as a result of the Defendant's bad faith denial of the Policy were reasonably foreseeable and contemplated by the parties at the time of contracting.

41.     That Plaintiff has an will sustain consequential damages as a result, including but not limited to the lost value of money, expenses associated with obtaining and utilizing alternative sources of funds, lost business opportunities, and otherwise.

**WHEREFORE**, Plaintiff, THE INN AT EAST WIND LLC, demands judgment against Defendant, CINCINNATI, as follows:

a.     Under the FIRST Cause of Action, damages in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00), plus consequential damages in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00), plus appropriate interest;

b.     Such other and further relief as the Court deems just and proper.

Dated:     Great Neck, New York
           February 14, 2022

                              Yours, etc.,

                              **GREENBLATT AGULNICK KREMIN, P.C.**


                              By:_____
                                   Scott E. Agulnick
                                   Attorney for Plaintiffs
                              **THE INN AT EAST WIND LLC**
                                   55 Northern Blvd., Suite 302
                                   Great Neck, New York 11021
                                   Tel:  (718) 352- 4800
                                   Fax: (718) 732- 2110

Case 2:22-cv-01343-JMA-ARL Document 1-2 Filed 03/11/22 Page 11 of 22 PageID #: 19

## ATTORNEY VERIFICATION

The undersigned, an attorney admitted to practice law in the State of New York, affirms the following to be true under penalty of perjury:

I have read the foregoing SUMMONS AND VERIFIED COMPLAINT and, upon information and belief, believe the contents thereof to be true. The basis of my belief is a review of the file maintained in my office. The reason I make this verification is because my client does not reside within the county in which I maintain my office.

Dated:      Great Neck, New York
            February 14, 2022

_____
      SCOTT E. AGULNICK, ESQ.

Case 2:22-cv-01343-JMA-ARL Document 1-2 Filed 03/11/22 Page 12 of 22 PageID #: 20

Index No:

SUPREME COURT OF THE STATE OF NEWE YORK
COUNTY OF SUFFOLK

THE INN AT EAST WIND LLC,

                              Plaintiffs,

              -against-

THE CINCINNATI INSURANCE COMPANY,

                              Defendant.

## SUMMONS AND VERIFIED COMPLAINT

### GREENBLATT AGULNICK KREMIN, P.C.
*Attorneys for Plaintiff*
*Office and Post Office Address, Telephone*
55 Northern Blvd, Suite 302
Great Neck, New York 11021
Tel:   (718) 352- 4800
Fax:   (718) 732- 2110
"WE DO NOT ACCEPT SERVICE BY ELECTRONIC TRANSMISSION (FAX)"

To:
Attorney(s) for

### Certification pursuant to 22 NYCRR 130-1.1(a)

It is hereby certified that, to the best of the undersigned's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the paper and/or the contentions herein are not frivolous as defined in section 130-1.1(c).

02/14/2022                    _____
    Dated                         SCOTT E. AGULNICK, ESQ.

Service of a copy of the within                    is hereby **admitted**

...................................................................
                        Attorney(s) for



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

July 23, 2021

The Inn At East Wind
5720 Route 25A
Wading River, NY 11792-2033

| RE: | Insured: | **The Inn At East Wind** |
|-----|----------|--------------------------|
|     | **Claim No.:** | **3748668** |
|     | **Policy No.:** | **ETD0556159** |
|     | **Loss Date:** | **June 9, 2021** |

Dear Mr. Barra,

Our investigation into the claim regarding the valve failure/leak in the chiller system located at 5720 Route 25A, Wading River, NY 11792-2033 is complete. Our obligation as an insurer is to pay all losses for which there is coverage provided by the Policy. In our desire to reach a fair decision, we are guided by all the information available.

During my phone-call with you on June 10, 2021, you explained to me that you had purchased two new Chiller systems which were installed by Apollo. The systems were run for a few months then were shut down for the winter. You further indicated that when you turned the systems back on for the season, you realized that they were not working properly and that there was a leak in the valve, which caused water to enter into the systems and freeze.

Cincinnati subsequently sent Willie Abad to inspect the valve and determine the cause of leak. We have also received a July 1, 2021 report from Sirco HVAC Incorporated who performed an inspection of your two Chiller systems. It has been determined that water was introduced into both units due to a faulty isolation valve located in the boiler room.

Now that the cause of loss has been identified, your Policy must be reviewed to determine if coverage is provided.  Section A. "Coverage" of your policy describes what we would pay for a covered loss.

> *"We will pay for direct "loss" to covered property at the "premises" caused by or resulting from any covered cause of loss."*

According to your policy, the "physical loss" must be the result of an "accident".  Quoted words are defined by the form.  Please refer to page 2 of your Equipment Breakdown Form FA245 to review the definition of an "accident":

> *"Accident" means sudden and accidental breakdown of the following covered equipment*
> *(1) Any boiler;*
> *(2) Any fired or unfired pressure vessel subject to vacuum or internal pressure other*
>     *than the static pressure of its contents;*
> *(3) Any piping and its accessory equipment;*
> *(4) Any refrigeration or air conditioning system;*
> *(5) Any mechanical or electrical machine or apparatus used for the generation,*

transmission or utilization of mechanical or electrical power; or
**(6)** Any "production machinery".
**(7)** Equipment of a type described in definition **a.(1)** through **(6)** above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services

At the time the breakdown occurs, it must become apparent by physical damage that the covered equipment or part thereof requires repair or replacement. When the covered equipment or part thereof experiencing a problem is "electronic circuitry" that suddenly loses its ability to function as designed or intended with no apparent physical damage, we will concede physical damage has occurred if the covered equipment or part thereof can be restored to normal operation by replacing one or more "electronic circuitry" components.

None of the following is an "accident":
**(1)** Depletion, deterioration, corrosion or erosion;
**(2)** Wear and tear;
**(3)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;
**(4)** The functioning of any safety or protective device;
**(5)** The breakdown of any structure or foundation supporting covered equipment or any of its parts;
**(6)** Any condition that can be reasonably remedied by normal maintenance such as:
   **(a)** Replacing expendable parts;
   **(b)** Recharging batteries; or
   **(c)** Rebooting, reloading or up-dating software or firmware; or
**(7)** Any condition caused by or related to:
   **(a)** Incompatibility of covered equipment or part thereof with any software or equipment installed, introduced or networked within the prior 30 days; or
   **(b)** Programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, or other condition within or involving data or media of any kind.

The quoted policy language states the "physical loss" must be from an "accident". Wear and tear, including leakage of any valve is not considered an "accident" according to the form's definition of "accident". Due to the quoted excerpts of the policy above no payment may be rendered in regard to replacement or repairs made, but Cincinnati would also like to make you aware of the following:

- By quoting the above referenced policy provisions, Cincinnati is not waiving any other policy provisions and specifically reserves the right to decline coverage for any other reason which may come to its attention in the future.
- Cincinnati reserves the right to amend or modify its coverage position whether based on facts presently known or facts subsequently developed.
- Cincinnati reserves the right to seek a judicial determination by filing a Declaratory Judgment Action to determine our respective rights and responsibilities under the policy.

All coverage decisions are based upon the investigation and policy number ETD0556159 for The Inn at Eastwind. Please review this information. If the Cincinnati Insurance Companies lack information, which may affect coverage, please notify me immediately.

Should you wish to take this matter up with the New York State Department Of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Services Bureau, New York State Insurance Department at: One State Street, New York, NY

10004; One Commerce Plaza, Albany, NY 12257; 163B Mineola Blvd, Mineola, NY 11501; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 13202.


Sincerely,

*Rory M Stecler*

Rory Stecker
Senior Claim Specialist
Cincinnati Insurance Company



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

Rory Stecker
PO Box 415
Port Jefferson Station, NY 11776

***VIA EMAIL***: sagulnick@kaglawfirm.com

February 11, 2022

Scott E. Agulnick
Greenblatt Agulnick Kremin P.C.
55 Northern Blvd #302
Great Neck, NY 11021

| Re: | Policyholder: | **The Inn at East Wind LLC** |
| --- | --- | --- |
| | **Policy No.:** | **ETD 055 61 59 (the "Policy")** |
| | **Claim No.:** | **3748668 (the "Claim")** |
| | **Date of Loss:** | **June 9, 2021 (as reported)** |
| | **Loss Location:** | **5720 Route 25A, Wading River, NY 11792** |

Dear Attorney Agulnick:

I am writing on behalf of The Cincinnati Insurance Company ("Cincinnati") in response to your letter dated January 10, 2022, requesting that Cincinnati reconsider its coverage determination in the above-referenced Claim. As explained in greater detail below, we agree to your request and will reassess our coverage denial and further investigate the allegations in your letter.

The Claim was initially presented to Cincinnati on June 9, 2021. At that time, Ken Barra reported that there had been a valve leak in the new chiller system in the hotel causing the system to freeze. Based on this report, Cincinnati reviewed coverage under the Policy's Equipment Breakdown Coverage, which applies to the sudden and accidental breakdown of any refrigeration or air conditioning system. Endorsement Form FA 245 NY 04 20, p. 2 of 4. Because the chiller system was specifically referenced by the Equipment Breakdown Coverage, Cincinnati did not consider coverage under the Building and Personal Property Coverage Form (FM 101 05 16).

Based on the issues raised in your January 10, 2022, letter, Cincinnati will review whether the Claim is covered under other coverage in the Policy, including Endorsement Form FM 101 05 16. Please refer to the attached addendum for the Policy provisions that may be applicable to exclude or limit coverage for the Claim. Please be advised, however, that the Policy provisions quoted in the addendum are not necessarily exhaustive of all of the Policy provisions that may apply to exclude or limit coverage for the Claim. Cincinnati reserves the right to rely on the referenced provisions and any other provisions of the Policy that may be applicable to the Claim.

Page 1 of 3

Please note that Cincinnati's investigation of the Claim is made without waiving its previously communicated coverage determinations. Nothing done by Cincinnati, or anyone acting on its behalf, during this continued investigation should be construed as an admission of liability by Cincinnati. To the contrary, Cincinnati reserves each and every right that it has under and pursuant to the Policy. Cincinnati's investigation and evaluation of the Claim is subject to this reservation of rights. Any statements or actions by Cincinnati, its representatives, or anyone acting on its behalf should not be construed or interpreted to be a waiver or relinquishment of any rights provided by the Policy.

Based on the information previously provided by the Policyholder and your letter, it is our understanding that the chiller system was winterized in October 2019, and remained in that condition throughout 2020. We were advised that the Inn did not have any guests in 2020, nor was the chiller system ever turned on during that time. It is our further understanding that the loss was discovered when the Policyholder began using the system again in June 2021. In order to assist with our continued investigation of the Claim, would you kindly confirm that the chiller system was not used, activated or otherwise inspected between October 2019 and June 2021? Also, if there are any documents in possession of the Policyholder that support this, please provide them to me. Once we receive this information, we will update you on the status of our coverage determination.

Should you have any questions or concerns, please do not hesitate to contact me.

Waiving none, but instead reserving to The Cincinnati all of its rights under the Policy and applicable law, I remain,

Respectfully,

*Rory M Stecler*

Rory Stecker
Senior Claims Specialist
Cincinnati Insurance Company
Rory_Stecker@cinfin.com
516-238-6644

Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 18 of 22 PageID #: 26

## ADDENDUM

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM
### (INCLUDING SPECIAL CAUSES OF LOSS)

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

\* \* \* \* \*

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\* \* \* \* \*

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditions or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

**1)** You did your best to maintain heat in the building or structure; or

**2)** You drained the equipment and shut off the supply if the heat was not maintained.

\* \* \* \* \*

**c.** **Limitations**

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS,** unless otherwise stated:

\* \* \* \* \*

**(4) Limitation – System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

FILED: SUFFOLK COUNTY CLERK 02/14/2022 05:07 PM
NYSCEF DOC. NO. 3

INDEX NO. 602775/2022
RECEIVED NYSCEF: 02/14/2022

Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 19 of 22 PageID #: 27



**GREENBLATT
AGULNICK
KREMIN P.C.**

**Scott E. Agulnick | Principal**
**Email:  sagulnick@GAKlawfirm.com**

January 10, 2022

**VIA EMAIL:  rory_stecker@cinfin.com**

Cincinnati Insurance Company
Attn:  Rory Stecker
6200 S. Gilmore Road
Fairfield, Ohio 45014-5141

| | |
|---|---|
| Re: | Letter of Representation and Notice of Breach |
| Insured: | The Inn At East End |
| Policy No.: | ETD 055 61 59 |
| Date of Loss: | June 9, 2021 |
| Loss Location: | 5720 Route 25A, Wading River, New York 11792 |

Dear Mr. Stecker:

Please be advised that this office has been retained by the Inn At East End (the "Insured") in connection with the above loss.  In this regard, based on our review of the loss details, we have concluded that the insured is entitled to coverage under the captioned Policy (the "Policy") and Cincinnati Insurance Company's ("Cincinnati") denial of coverage was at best, an erroneous coverage determination.  Based on our review, however, it appears that Cincinnati denied the Insured's freeze-damage claim in bad faith.   In short, Cincinnati's denial is improper, as Cincinnati's entire claims handling process and determination was predicated upon a skewed and misguided proximate cause and coverage analysis.

As you are aware, Cincinnati issued a denial letter dated July 23, 2021 (the "Denial Letter").  The Denial Letter stated, in pertinent part:

> During my phone-call with you on June 10, 2021, you explained to me that you had purchased two new Chiller systems which were installed by Apollo. The systems were run for a few months then were shut down for the winter. You further indicated that when you turned the systems back on for the season, you realized that they were not working properly and that there was a leak in the valve, which caused water to enter into the systems and freeze.

55 Northern Boulevard, Ste 302, Great Neck, NY 11021 | ☎ +1 718-352-4800 | 🖨 +1 718-352-4800
**www.GAKlawfirm.com**
**Great Neck, NY  ●  Melville, NY**

INDEX NO. 602775/2022
RECEIVED NYSCEF: 02/14/2022

Case 2:22-cv-01343-JMA-ARL   Document 1-2   Filed 03/11/22   Page 20 of 22 PageID #: 28

Cincinnati subsequently sent Willie Abad to inspect the valve and determine the cause of leak. We have also received a July 1, 2021 report from Sirco HVAC Incorporated who performed an inspection of your two Chiller systems. It has been determined that water was introduced into both units due to a faulty isolation valve located in the boiler room.

Now that the cause of loss has been identified, your Policy must be reviewed to determine if coverage is provided. Section A. "Coverage" of your policy describes what we would pay for a covered loss.

"We will pay for direct "loss" to covered property at the "premises" caused by or resulting from any covered cause of loss."

The Denial Letter then cites coverage language related to "Equipment Breakdown Form FA245" and Cincinnati then undertakes a coverage analysis under the "Equipment Breakdown" policy form. Yet, Cincinnati neglected to undertake any coverage analysis based upon other pertinent language in the Policy including BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) FM 101 05 16. This failure is outcome determinative. Indeed, Cincinnati has entirely butchered what should have been a routine finding that the proximate cause of the loss itself was not a "leak" but rather freezing of the air conditioning system. In other words, Cincinnati's entire coverage analysis was a sham to avoid paying a covered claim.

As you are aware, BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) FM 101 05 16 states: "Covered Causes of Loss means direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." With regard to loss covered by freezing, we trust you are well aware the exclusion and exceptions to the exclusion sets forth:

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

**1)** You did your best to maintain heat in the building or structure; or

**2)** You drained the equipment and shut off the supply if the heat was not maintained.

In November, 2021, your office engaged the services Levine Fidellow Engineering Consultants. Consistent with the insureds' understanding of the mechanism of the loss, Michael Walsh, P.E. stated:

The two new exterior chillers were installed in February 2019. The chillers were winterized in October 2019, which included isolating the exterior piping and draining all water from this piping and the chillers. The exterior chillers were not commissioned in 2021 due to Covid and remained winterized until 2021. Water was seen dripping from the exterior chiller units in June 2021.

While in the winterized state, chilled water entered the exterior chilled water circuit of the outdoor units. The water had entered the tube bundles of the outdoor units and froze, splitting the tubes in the tube bundle assembly.

Cincinnati's own engineer, Mr. Walsh, corroborated what the insured had previously reported: The cause of the damage to the units was freezing and the damage resulting therefrom. As such, it is unclear how Cincinnati undertook a shoulda-woulda-coulda exercise in futility related to mechanical breakdown and a valve. It is interesting to note, however, that Cincinnati instructed its engineer that the cause of the loss was to be referred to as a "valve leak," as is evident from even the header of Mr. Walsh's letter. This instruction is telling of Cincinnati's malevolent intention of obtaining a result-driven finding of no-coverage when it retained its engineer.

The facts, and Cincinnati's investigation dictate, that the efficient proximate cause of the Loss here was not the leaking valve. Rather, the proximate cause of the Loss here was freezing, a peril covered under the Policy as an exception to exclusion. To use parallel example, if a building burns down because of a gas leak, the efficient proximate cause of the loss is not a gas leak. The proximate cause of the loss is obviously fire. The building was not physically damaged by the gas leak from a valve, the same way the equipment here and tubes were not damaged from water leaking from a valve.

As the Southern District of New York stated in *Montefiore Medical Center v. American Protection Ins. Co.*:

New York courts give a narrow scope to the inquiry of proximate cause in this context. *Id.* Thus, "the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings"

*Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 226 F. Supp. 2d 470, 478 (S.D.N.Y. 2002) (internal citations omitted, *quoting Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1006 (2d Cir. 1974)*(rejecting arguments that politically-motivated hijacking came within war risk exclusion to all-risk policy)).

It follows that the only coverage analysis probative or relevant here relates to the peril of freezing. As you are aware, the Freezing Exclusion provides for two exceptions, one being that the appliance is drained of all water. As Cincinnati's engineer's report corroborates, the "chillers were winterized in October 2019, which included isolating the exterior piping and draining all water from this piping and the chillers." As such, the exception to the exclusion has been satisfied. Accordingly, Cincinnati's entire engineering analysis with respect to the type of valve was nothing more than a charade to provide an excuse for Cincinnati's pre-determined coverage position. The

valve's alleged failure is entirely immaterial to the issue of first-party coverage here, just as the gas valve would be inconsequential to first-party coverage for a building explosion. Since Cincinnati's engineer concluded that the efficient proximate cause of the equipment was the expansion of frozen water within tubes, and confirmed that the Insured did in fact winterize, the coverage conversation ends there.

We are confident that if we are required to litigate this matter, there will be no question that the proximate cause of the freeze damage would be freezing. Any assertion to the contrary defies credulity and logic. Given the foregoing, we will afford Cincinnati a period of seven (7) days to amend its coverage determination and afford coverage under the Policy in the ordinary course of business. Should Cincinnati take the opportunity to rectify its error and withdraw its coverage denial, please advise within that time and we will transfer the file back to the retained public adjuster for final adjustment and closure.

Should Cincinnati decline this opportunity, please be advised that the Insured will seek consequential damages pursuant to *Bi-Economy Market, Inc.* As you may be aware, the Court in Bi-Economy held as follows:

> The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made. It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, [i]t is only necessary that loss from a breach is foreseeable and probable.

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 193, 856 N.Y.S.2d 505, 508 (2008).

We trust that Cincinnati will revisit its coverage determination and honor its coverage obligations under the Policy. We look forward to hearing from your office in an expeditious manner and look forward to an amicable resolution.

Sincerely,

Scott E. Agulnick

SEA:TDK:vv